**UNITED STATES COURT OF INTERNATIONAL TRADE**

_____x
ITOCHU BUILDING PRODUCTS CO., INC., *et al*,  :
                                           :
                            Plaintiffs,  :     Court No. 13-00132
        v.                                   :
                                           :
UNITED STATES,                                :
                                           :
                            Defendant.   :
_____x

**COMPLAINT**

       Plaintiffs, Itochu Building Products Co., Inc., Tianjin Jinghai County Hongli Industry & Business Co., Ltd., Huanghua Jinhai Hardware Products Co., Ltd., Tianjin Jinchi Metal Products Co., Ltd., Shandong Dinglong Import & Export Co., Ltd., Tianjin Zhonglian Metals Ware Co., Ltd., Huanghua Xionghua Hardware Products Co., Ltd., Shanghai Jade Shuttle Hardware Tools Co., Ltd., Shanghai Yueda Nails Industry Co., Ltd., Shanxi Tianli Industries Co., Ltd., Mingguang Abundant Hardware Products Co., Ltd., China Staple Enterprise (Tianjin) Co., Ltd. and Certified Products International Inc. (collectively "Plaintiffs"), by and through their attorneys, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, hereby file this complaint and state as follows:

ADMINISTRATIVE DETERMINATIONS TO BE REVIEWED

1.       The administrative determination challenged by this action is *Certain Steel Nails From the People's Republic of China: Final Results and Final Partial Rescission of the Third Antidumping Duty Administrative Review,* 2010 – 2011, 78 Fed. Reg. 16,651 (Mar. 18, 2012). The results cover the period of review from August 1, 2010 through July 31, 2011 ("POR 3"). The Final Results were issued by the U.S. Department of Commerce ("Department") pursuant to

Section 751, Tariff Act of 1930, as amended ("the Act"), 19 U.S.C. § 1675. The Final Results were accompanied by an Issues and Decisions Memorandum ("I&D Memo") discussing the reasons for decisions on the various issues raised by the parties during the course of the proceeding.

## JURISDICTION

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. 1581(c).  That section confers on the United States Court of International Trade exclusive jurisdiction to review the final results of antidumping duty administrative reviews issued by the Department under Section 751 of the Act.

## STANDING OF THE PLAINTIFFS

3.     Plaintiffs are producers, exporters, and/or importers of certain steel nails from China, and, therefore, are interested parties within the meaning of Sections 771(9)(A) and 516A(f)(3) of the Act (19 USC 1677(9)(A) and 1516a(f)(3)).  In addition, Plaintiffs participated in the administrative proceeding that is the subject of this challenge, and accordingly have standing to commence this action pursuant to 19 U.S.C. 1516a(d) and 28 U.S.C. 2631(c).

## TIMELINESS OF THIS ACTION

4.     On March 18, 2013, the Department published in the *Federal Register* a notice announcing the Final Results of the POR 3 Annual Review.  78 Fed. Reg. 16,651.  On March 27, 2013, within 30 days after the Final Results were published in the *Federal Register*, Plaintiffs filed a summons with this Court.  This complaint is being filed contemporaneously with the filing of the summons.  Both the summons and the complaint have been filed within the statutory time limits specified in Section 516A(a)(2)(A)(i)(I) of the Act (19 USC 1516a(2)(A)(i)(I)).

## STATEMENT OF FACTS

5. On October 3, 2011, the Department published in the Federal Register a notice of initiation of an administrative review of the antidumping duty order on nails from China for the period August 1, 2010 through July 31, 2011.

6. On November 28, 2011, the Department selected Stanley and JISCO as mandatory respondents.

7. On February 6, 2012, after receiving timely requests for withdrawal of the review from JISCO and Petitioner, the Department selected Tianjin Jinghai County Hongli Industry & Business Co., Ltd. ("Hongli") as a mandatory respondent in place of JISCO.

8. On September 4, 2012, the Department published the Preliminary Results of POR 3 in the Federal Register (77 Fed. Reg. 53,845). In these results, the Department found that Stanley's dumping margin was zero, Hongli's dumping margin was 22.07 percent, and the margin for other plaintiff/ exporters, the Separate Rate companies, was 22.07 percent. The 22.07 percent rate was the rate of the mandatory respondent, Hongli, since Hongli was the only mandatory respondent with a rate which was not zero or based on total adverse facts available.

9. In its Preliminary Determination, the Department designated Ukraine as the primary surrogate country from which to select surrogate values ("SV") used to calculate Normal Value and concluded that publicly available Ukraine sources constitute the best available information on the record for the SVs for the respondents' raw materials, packing, by-products, and financial ratios. The Department reasoned that the record showed that data from these sources are contemporaneous with the POR, product-specific, tax-exclusive, and represent a broad market average.

10.     On March 18, 2013, the Department published its Final Determination, accompanied by its I&D Memo.

11.     In its Final Determination, the Department concluded that Hongli's margin was 33.40%, and that margins for the other Plaintiffs, the separate rate companies, also was 33.40%. The separate rate margins were based solely on Hongli's margin, since Hongli was the only mandatory respondent to receive a rate other than zero or based on total adverse facts available.

12.     In its Final Determination, the Department designated Thailand as the primary surrogate country from which to select surrogate values ("SV") used to calculate Normal Value and concluded that publicly available Thailand sources constitute the best available information on the record for the SVs for the respondents' raw materials, packing, by-products, and surrogate financial ratios.

13.     In its Final Determination, the Department concluded that China Staple Enterprise (Tianjin) Co., Ltd. and Certified Products International Inc. did not have any shipments of subject nails during POR 3, and accordingly rescinded the Annual Review for these companies pursuant to 19 C.F.R. 351.213(d)(3).

14.     In its Final Determination, the Department listed China Staple Enterprise (Tianjin) Co., Ltd. and Certified Products International Inc. as separate rate companies, assigning those companies a dumping margin of 33.40 percent.

## FIRST CAUSE OF ACTION

15.     The allegations of paragraphs 1-14 are incorporated by reference.

16.     The Department rejected Petitioner's argument that Ukraine was not a reliable source for surrogate value data and concluded that Ukraine data was appropriate for consideration for surrogate value purposes.

8701038_1

17.     The Department concluded that Ukraine was the largest producer of subject nails during POR 3, with export levels of 18,571,880 kg., compared to 8,784,527 kg. for Thailand.

18.     The Department's decision to select Thailand, rather than the Ukraine, as the primary surrogate country, and to value respondents' raw materials, packing, by-products, and the surrogate financial ratios based on data from Thailand, rather than the Ukraine, was not supported by substantial evidence in the record and was contrary to law.

## SECOND CAUSE OF ACTION

19.     The allegations of paragraphs 1 -18 are incorporated by reference.

20.     The Department concluded that the financial statement of Dnerometiz, a producer of steel nails in the Ukraine, which had been placed on the record as a public document, was not publicly available, and, accordingly, could not be used as the basis for surrogate financial ratios.

21.     The Department's decision to select Thailand as the principal surrogate country, rather than the Ukraine, was based in part on its subsidiary conclusion that the financial statement of Dnerometiz was not a publicly available document.

22.     The Department's decision that the financial statement of Dnerometiz was not publicly available, and, accordingly, could not be used as the basis for surrogate financial ratios, and that as a result Thailand rather than Ukraine should be selected as the principal surrogate country, was not supported by substantial evidence in the record and was contrary to law.

## THIRD CAUSE OF ACTION

23.     The allegations of paragraphs 1 - 22 are incorporated by reference.

24.     Wire rod is the primary input material used to manufacture steel nails.

25. The record contained three potential sources to value wire rod:  Thailand import data, Ukraine import data and Ukraine domestic data.

26. The Department concluded that all three sources of data were publicly available, reliable, contemporaneous to the POR, representative of a broad market average, from an approved surrogate country, and tax and duty exclusive.

27. Ukraine domestic data was more specific to the wire rod used to produce subject nails than Ukraine import data or Thailand import data.

28. The Department concluded that Ukraine import data and Thailand import data were preferable sources to value wire rod than Ukraine domestic data because the import data specified the carbon content of the wire rod, while the domestic data did not.

29. The Department concluded that the Thailand import data and the Ukraine import data were equally specific to wire rod used to produce subject nails.

30. The Department decided to value wire rod based on the Thailand import data rather than based on the Ukraine import data based upon its decision that the primary surrogate country was Thailand, and not the Ukraine.

31. The Department's decision to value wire rod based on Thailand import data rather than Ukraine domestic data or Ukraine import data  was not supported by substantial evidence in the record and was contrary to law.

## FOURTH CAUSE OF ACTION

32. The allegations of paragraphs 1 - 31 are incorporated by reference.

33. Steel plate is used to produce cut plate nails.

34. The record contained two potential sources to value steel plate:  Thailand import data and Ukraine import data.

35. The Department concluded that both sources of data were publically available, reliable, contemporaneous to the POR, representative of a broad market average, from an approved surrogate country, and tax and duty exclusive.

36. The Department concluded that Thailand data was preferable to Ukraine data because the Thailand data specified the carbon content of the steel plate, while the Ukraine data did not.

37. The Department's decision to value steel plate based on Thailand import data rather than Ukraine import data was not supported by substantial evidence in the record and was contrary to law.

## FIFTH CAUSE OF ACTION

38. The allegations of paragraphs 1 - 37 are incorporated by reference.

39. In its Final Determination, the Department determined that China Staple Enterprise (Tianjin) Co., Ltd. ("China Staple") and Certified Products International Inc. ("CPI") did not have any shipments of subject nails during POR 3, and accordingly decided to rescind the Annual Review for these companies pursuant to 19 C.F.R. 351.213(d)(3).

40. In its Final Determination, the Department listed China Staple and CPI as separate rate companies, assigning them a dumping rate of 33.40 percent.

41. The Department's decision to list China Staple and CPI as separate rate companies and assign dumping rates to those companies was not supported by substantial evidence in the record and was contrary to law.

## SIXTH CAUSE OF ACTION

42. The allegations of paragraphs 1 - 41 are incorporated by reference.

43. The Department's calculation of the dumping margin for the separate rate respondents should be based on the weighted average of the final dumping margins of the mandatory respondents, as calculated by the Department after receiving a final decision from the Court of International Trade.

44. Insofar as the dumping margins for the separate rate respondents have not been calculated based on the final rates of dumping margins calculated by the Department after receiving a final decision from the Court of International Trade, such rates are not supported by substantial evidence and are contrary to law.

DEMAND FOR JUDGMENT AND RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment (1) holding unlawful the determinations of the Department identified above; (2) remanding this matter to the Department for determinations consistent with the holding of this Court; and (3) providing such other, further and additional relief as this Court may deem just and proper.

/s/ Bruce M. Mitchell_____

Bruce M. Mitchell
Mark E. Pardo
Ned H. Marshak
Dharmendra Choudhary
Kavita Mohan
GRUNFELD, DESIDERIO, LEBOWITZ
SILVERMAN & KLESTADT LLP

1201 New York Ave., NW
Suite 650
Washington, DC 20005
(202) 783-6881

399 Park Avenue-25th Floor
New York, NY  10022
(212) 557-4400

Dated: March 27, 2013

8701038_1